IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



FILED
JUN 2 5 2025
Clerk, U.S. District Court
Texas Eastern

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Judge Mazzant |
| v. | § | Case No. 4:23-CR-63 |
| | § | |
| MARK EXPOSITO | § | |

## SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Introductory Allegations

At all times material to this Indictment:

1. Defendant Mark Exposito (**"EXPOSITO"**) was an individual residing in Arizona and North Texas.

2. William Lavin was an individual residing in North Texas. Lavin died in April of 2023.

3. Fenton Motor Group ("FMG") was a corporation headquartered in Frisco, Texas, functioning as a management company that oversaw the operation of car dealerships in multiple states. Individual B.F. was the owner Chief Executive Officer ("CEO") of FMG. Beginning in or around April of 2016, and continuing through December 2018, **EXPOSITO** was FMG's Chief Operating Officer ("COO"). Beginning in or around March 2014, Lavin was FMG's Chief Financial Officer ("CFO").

4. Circle E Ranch, LLC ("Circle E") and Expo Motor Group ("EMG") were

1

business entities created by **EXPOSITO**. **EXPOSITO** used these entities to further the scheme to defraud and to receive and hold money and property that **EXPOSITO** obtained by means of the conspiracy to commit wire fraud.

5.  BancFirst ("BancFirst"), Wells Fargo Bank ("Wells Fargo"), Prosperity Bank ("Prosperity"), and American Express Bank ("AMEX"), (collectively "Financial Institutions"), were financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC").

## Count One

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Wire
Fraud)

**A.   The Conspiracy**

6.  Beginning in or around April 2016, the exact date of which being unknown to the Grand Jury, and continuing thereafter up until in or around December of 2018, in the Eastern District of Texas and elsewhere, **MARK EXPOSITO,** defendant, did intentionally, knowingly, and willfully combine, conspire, and agree with other persons known and unknown to the United States Grand Jury (hereinafter "co-conspirators") to devise a scheme and artifice to defraud, and to obtain money and property under the custody and control of one or more other individuals and business entities by means of materially false and fraudulent pretenses

and representations, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, in violation of 18 U.S.C. § 1343.

**B.   Purpose of the Conspiracy**

7.   It was the general purpose of the conspiracy for the defendant and his co-conspirators to defraud business entities and their employer and to obtain money from these entities by means of false and fraudulent pretenses, representations, and promises.

**C.   Manner and Means of the Conspiracy**

8.   The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

9.   **EXPOSITO**, Lavin, and one or more other co-conspirators, using a variety of means, and employing false and misleading promises, statements, and representations, obtained money and property from accounts belonging to other individuals and business entities without their consent, and moved that money to bank accounts held and controlled by **EXPOSITO** and others. As detailed below, **EXPOSITO** and Lavin, along with others known and unknown to the Grand Jury, endeavored to conceal the nature and source of these funds, but in the end,

**EXPOSITO** and others enriched themselves with approximately more than $7,000,000.00 in money and property obtained from individuals and businesses during the course of the scheme to defraud, which they used to unlawfully pay off personal credit card purchases and purchase real estate, vehicles, jewelry, designer clothing, all for personal purposes, and to pay for travel.

**D.     Acts in Furtherance of the Conspiracy:**

10.     In furtherance of the conspiracy and to achieve its object and purpose, the following acts, among others, were committed in the Eastern District of Texas and elsewhere:

11.     Lavin gave himself the ability to make ACH money transfers from FMG bank accounts at BancFirst and created a multifactor authentication account by deceptive means, and by using this system created the illusion that ACH transfers had been vetted and approved by another individual.

12.     In or around April 2016, Lavin began transferring money from FMG and dealer accounts to bank accounts controlled by **EXPOSITO** and Lavin. Lavin used ACH transfers directly from FMG accounts instead of using another means such as a payroll system that would have made the transfers more obvious. Neither **EXPOSITO** nor Lavin paid federal income taxes on the fraudulent money received.

13.     **EXPOSITO** opened American Express ("AMEX") business credit cards using the names of FMG ("FMG AMEX") and Circle E Ranch ("Circle E AMEX"),

which were then used by **EXPOSITO** and others with his knowledge and consent to pay personal and business expenses. **EXPOSITO** caused all credit card bills to be sent to his personal residence, thereby concealing the existence and use of these accounts.

14.     **EXPOSITO** and others known and unknown to the Grand Jury would fraudulently transfer FMG's and others' money to **EXPOSITO's** personal Wells Fargo bank account via interstate ACH wire transfers. **EXPOSITO** would then use the money that they obtained from FMG and others to pay the AMEX bills, including amounts that **EXPOSITO** and others incurred as personal expenses. The personal AMEX charges were spent on jewelry, designer clothing, high-end goods and services, personal driving services, first class international airline tickets, and miscellaneous personal expenses. **EXPOSITO** also used the AMEX account for expenses benefitting Circle E, which EXPOSITO then paid off using FMG funds. During the course of the conspiracy, **EXPOSITO** alone and in combination with others, and aiding and abetting each other, used the funds to pay for over approximately $2,500,000.00 in personal AMEX purchases.

15.     Certain members of the conspiracy used their trusted position within FMG to disguise and conceal the true nature of the transactions within the books and records of the **FMG** and its affiliate dealerships, by recording false descriptions of the transactions in the FMG business records and the records of FMG dealerships.

16.     In order to conceal their fraudulent activities, **EXPOSITO** and others

acting in combination and conspiracy with him made false representations and statements to further their scheme and to avoid detection of their fraud, including assertions that **EXPOSITO** wanted to and would purchase the car dealerships, instructing others to bypass the company owner with concerns, and concealing the nature of their actions from individual B.F., the owner of FMG.

17. Upon leaving employment with FMG, **EXPOSITO** started a new business outside of Texas, making use of more than $1,000,000 of the money that he obtained by the above fraudulent scheme.

All in violation of 18 U.S.C. § 1349.

COUNTS TWO THROUGH FIFTEEN INTENTIONALLY OMITTED

## Counts Sixteen through Twenty-Three

Violation: 18 U.S.C. § 1343<br>(Wire Fraud)

18. The allegations in paragraphs 1-17 are incorporated here by reference, for all purposes.

19. On or about each of the dates set forth below, in the Eastern District of Texas and elsewhere, **EXPOSITO**, aided and abetted by others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count, and each affecting a financial institution, and did so with the specific intent to defraud:

| Count | Date (On or About) | Description of the Interstate Transmission |
|---|---|---|
| 16 | 4/10/2018 | ACH funds transfer of approximately $72,325.00 from FMG BancFirst account #XX3444 to Lavin's Prosperity Bank account #XX7515. |
| 17 | 4/10/2018 | ACH funds transfer of approximately $133,207.92 from FMG BancFirst account #XX3444 to Exposito's Wells Fargo Bank account #XX8111. |
| 18 | 5/7/2018 | ACH funds transfer of approximately $68,070.00 from FMG BancFirst account #XX3444 to Lavin's Prosperity Bank account #XX7515. |
| 19 | 5/7/2018 | ACH funds transfer of approximately $63,870.00 from FMG BancFirst account #XX3444 to Exposito's Wells Fargo Bank account #XX8111. |
| 20 | 5/11/2018 | ACH funds transfer of approximately $60,000.00 from FMG BancFirst account #XX3444 to Lavin's Prosperity Bank account #XX7515. |

| Count | Date (On or About) | Description of the Interstate Transmission |
|---|---|---|
| 21 | 5/11/2018 | ACH funds transfer of approximately $60,000.00 from FMG BancFirst account #XX3444 to Exposito's Wells Fargo Bank account #XX8111. |
| 22 | 7/13/2018 | ACH funds transfer of approximately $60,925.00 from FMG BancFirst account #XX3444 to Lavin's Prosperity Bank account #XX7515. |
| 23 | 7/13/2018 | ACH funds transfer of approximately $60,925.00 from FMG BancFirst account #XX3444 to Exposito's Wells Fargo Bank account #XX8111. |

All in violation of 18 U.S.C. § 1343.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461, and 18 U.S.C. §§§ 982(a)(l), 982(a)(2)(A), and 982(a)(2)(B)

As the result of committing the offenses alleged in this Superseding Indictment, the defendant shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461, and 18 U.S.C. §§§ 982(a)(l), 982(a)(2)(A), 982(a)(2)(B), all property, real or personal, that constitutes or is derived from proceeds traceable to the aforementioned offenses including but not limited to the following:

**Real Property:**

    a. 24955 N. Sage Haven Drive, Paulden, AZ (Yavapai County Parcel 305-01-008)

    b. N. Calico Lane, (2.2 Acres) Paulden, AZ (Yavapai County Parcel 305-01-012A)

    c. E. Cougar Ridge Road, (8 Acres) Paulden, AZ (Yavapai County Parcel 305-01-007K)

    d. 24975 N. Calico Lane, Paulden, AZ (Yavapai County Parcel 305-01-003K)

    e. N. Sage Haven (N. Camino Del Reino), Paulden, AZ (Yavapai County Parcel 305- 01-002Q)

**Personal Property:**

    a. a Tiffany platinum band with a full circle of round brilliant diamonds, 3.9 mm wide, and a 1.80 carat total weight; and

    b. a Tiffany diamond ring with a 2.34 carat Cut Cornered Rectangular VVS2 stone;

    c. Loose Round Brilliant Diamond, GIA 2175803140 4.01 I SI 1;

    d. Platinum Diamond Eternity Band, 26=2.6CT FG VS Emerald Cut Diamond Shared Prong Size 10.5;

    e. 18KYG/White Gold Roberto Coin Pave Diamond POIS MOI Cufflinks;

    f. Trill Matched Pair Special Order Diamond, 44125868 1.65 CTTW FY VS2;

    g. Plat Emerald Cut Diamond Eternity Band, 24=7.44CT FG VS, Emerald Cut Diamond Shared Prong Set, SZ 10.5;

    h. Rolex 18KWG 39MM OP DateJust PearlMaster Watch, Mother Of Pearl Dial, Diamond Index, Date/Sec, Round Diamond Bezel on 5 Row Polished Pearl Master Bracelet w/Deployment Clasp;

    i. Platinum Diamond 7.5" Bracelet, 157=18.95CT EF VS PC/BG Diamond Hiacia Flex Bracelet, w/104 PC Diamonds in Rows with 2 PC DIA per Row, 52 BG Diamonds and one Trademark Diamond on Side;

    j. Diamond Studs, GIA 2173435908 & 2175715643 18KYG 1=2.08CT FIY VS2 CU, 1=2.14 CT FIY IF CU.

**Money Judgment**

A money judgment in a sum that constitutes, or is derived from, proceeds obtained directly or indirectly, as the result of the offense alleged in this Superseding Indictment.

**Substitute Assets**

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant -

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with a third person;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendant.

By virtue of the commission of the offenses alleged in this Superseding Indictment, any and all interest the defendant has in the above-described property is vested in and forfeited to the United States.

A TRUE BILL

_____ 6/25/25
GRAND JURY FOREPERSON

JAY R. COMBS
ACTING UNITED STATES ATTORNEY

_____  June 25, 2025
BY: Thomas E. Gibson
Assistant United States Attorney

Matthew T. Johnson
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Judge Mazzant |
| v. | § | Case No. 4:23-CR-63 |
| | § | |
| MARK EXPOSITO | § | |

## **NOTICE OF PENALTY**

### **Count One**

Violation:   18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

Penalty:   Imprisonment for a term of not more than 20 years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment.

If it is shown that the violation affected a financial institution, imprisonment of not more than 30 years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment.

Special Assessment: $100.00

### **Counts Sixteen - Twenty Three:**

Violation:   18 U.S.C. § 1343
(Wire Fraud)

Penalty:   Imprisonment for a term of not more than 20 years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary

gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment.

If it is shown that the violation affected a financial institution, imprisonment of not more than 30 years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment.

Special Assessment: $100.00